JOHN A. POOR *vs.* EUROPEAN & NORTH AMERICAN RAILWAY COMPANY.

*Pleading.  Demurrer.  Practice.*

When pleadings end in a demurrer, judgment must be rendered against the party which committed the first fault.

A declaration alleging that the plaintiff at the request of the defendants, a railroad corporation, had conveyed his stock therein to a third person, to be held in trust for certain purposes, and that the defendants in consideration thereof agreed with such trustee not to issue any additional stock without the consent of the contractors, who were constructing their railroad; but that the defendants, without such consent, had issued other stock whereby the value of that conveyed in trust by the plaintiff had been materially diminished,— discloses no ground of an action either *ex-contractu* or *ex-delicto*.

ON EXCEPTIONS.

ACTION.

"In a plea of the case for that the defendant company, before the 14th day of March, 1866, had entered into a contract with one George H. Pierce and one Albert Blaisdell for the construction of the railway of said company, to be paid for in cash, to the said Pierce and Blaisdell, at certain rates therein stipulated, under which contract payments were then due and in arrears from said

company to said contractors, and the said company was not able to pay the same, and the said contractors were not bound to proceed in said work, and had suspended the same, and, therefore, the said contractors, on the 11th day of March, 1866, proposed to said company, to continue their work under said contract, upon that part of the line, extending from the city of Bangor to the town of Winn, in this State, notwithstanding such arrears, upon the condition, amongst other things, that a major part of the stock of said company should be put into the hands of said contractors and their associates, as security for the money which they should advance in doing said continued work, and afterwards, on the 21st day of the same month, the company accepted said proposition, in the terms thereof, upon the condition that stockholders of the company should make such disposition of the stock as was required by the terms of said proposition, and such as would place in the hands of the said contractors and their associates a majority of the stock of the company. And the plaintiff avers that he was then a stockholder in said company, owning four hundred and sixty-six shares of the paid-up capital stock of the same, and for the purpose of carrying into effect the said proposition of the contractors and the acceptance thereof, under the conditions aforesaid, the said company then and there requested the plaintiff and other stockholders, severally, to transfer to the said contractors such number of shares belonging to them respectively, as should be a majority of all the paid up capital stock of the company, and voted that any further issue of stock for the payment of land damages, or other needful expenses of the company or for the completion of the line to the town of Winn, should be authorized only on the written consent of the said contractors. And, therefore, the plaintiff, in pursuance of said request, and confiding in the vote so passed, on the day following transferred to the said Pierce and Blaisdell 373 shares in the said capital stock; and other stockholders at the same time, in pursuance of said request, and confiding in said vote, also transferred other and further shares in said capital stock, to said Pierce and Blaisdell in such number, to wit, 574 shares, as made and consti-

tuted a majority of all the paid-up capital stock of said company, and the said transfers were received by the said Pierce and Blaisdell in fulfillment of the terms of their proposition aforesaid,—and the said company had the benefit of the same for the purpose of carrying the said proposition and the acceptance thereof into effect. And the said Pierce and Blaisdell, at the request of said company, and for the purpose of effecting the object of said transfer and securing the rights of the plaintiff, and said other stockholders in the stock so transferred, then and there gave to the plaintiff and said other stockholders severally, accountable receipts for the same, engaging and assuring that when they should have completed the said railway from Bangor to Winn aforesaid in pursuance of their contract aforesaid, and the same should have been paid for according to the terms of said contract, as modified by the proposition hereinbefore recited, and the acceptance thereof, they would transfer and return the said stock to the plaintiff and said other stockholders, or to their order, and not otherwise. And the plaintiff avers that by all the several acts, requests, and votes of the said company herein recited and set forth as aforesaid, and the compliance of the plaintiff with such request to transfer his stock as aforesaid, the said company was bound and obliged in good faith to observe the trust so created in respect to the plaintiff's stock and his rights therein, and was bound to do no act which should impair the value of the plaintiff's interest in the stock so transferred by him, or the other stock belonging to him, and was bound and obliged not to make any further issue of stock of the company by the transferring for the completion of the line to Winn, without the written consent of the said contractors. And the plaintiff further avers that no such consent was ever given by said contractors at any time after said 21st day of March, 1866, before the time of the acts and votes of said company hereinafter recited. Yet the said company, unmindful of its said obligations, and contriving and intending to injure and defraud the plaintiff and to violate the trust which the said company had entered into and undertaken in respect to the plaintiff's said shares, and contriving and intending

to destroy the value of the same and all the plaintiff's rights therein ; afterwards, on the 23d day of December, 1867, at Bangor aforesaid, by the action and vote of the directors of said company, voted to issue other and further stock of said company, and other and further certificates of shares in the same, on paid-up stock, to a large amount, namely, twelve hundred and fifty shares of the par value of $125,000, to a certain person or persons who claimed to have performed work under said construction contract, in the construction of a small part of said railway from Bangor to Winn, and to issue the same in payment for such work claimed to be of that value, and afterwards, within one month thereafter, actually issued and delivered such further certificates of stock to the person or persons aforesaid, although the said contractors did not give their consent thereto, and although the said work from Bangor to Winn was not completed, but remained to a large extent unfinished and incomplete, and although no provision whatever was made in said construction contract or otherwise for payment for any such work in stock of the company.

" Whereby and by reason of this said wrongful and fraudulent acts, contrivances, and intents of said company, the plaintiff has been greatly damnified, and his interests in the stock so placed by him in trust as aforesaid, and the value thereof has been greatly impaired, diminished, and destroyed. And by the same wrongful, fraudulent acts, contrivances, and intents, the value of plaintiff's other stock in said company has also been greatly impaired, diminished, and destroyed. To the damage of said plaintiff (as he says), the sum of forty thousand dollars."

### PLEA.

" And the said defendant corporation comes, etc., when, etc., and prays judgment if the plaintiff, his action aforesaid thereof against it, ought to have or maintain because it says that after the making of the contract for the construction of its railroad as alleged in the declaration, and after the making and acceptance of the proposition recited in the declaration as therein alleged on the twenty-first day

of March, A. D. 1866, and before the issue of capital stock in the declaration complained of, to wit, on the eighth day of May, A. D. 1866, the said Pierce and Blaisdell made an agreement in writing between themselves of the first part, and John H. Wiggins, Philander C. Brink, J. Edgar Thompson, John H. Bradley, Benj. E. Smith, and Thomas W. Pierce, and such other persons as should be selected by said Wiggins, Brink, Thompson, Bradley, Smith, and Thomas W. Pierce, and should sign said agreement, provided that the whole number should not exceed ten, equally interested, of the second part; by which agreement the said Pierce and Blaisdell for a valuable consideration therein expressed, did sell, assign, and transfer so much of said contract for the construction of the defendants' railroad to the parties of the second part as gave and secured to each of them, the following interests, to wit, to said Wiggins, Pierce, Blaisdell, Brink, Thompson, Bradley, Smith, and Thomas W. Pierce, each one-tenth, and to such persons as should thereafter be selected and sign said agreement as aforesaid, two-tenths; and thereafterwards, to wit, on the tenth day of said May, William G. Case and William Dennison were selected as aforesaid, and did sign said agreement, and thereby became parties thereto, and owners of one-tenth each of said contract, and the signing of said agreement by said Case and Dennison, was on the same day ratified and confirmed by all the other parties thereto; and it was further stipulated in said agreement that the assignment of said contract should include and carry with it the said supplemental contract of March 21, 1866, for the control of said company; and it was further provided, by said agreement, that said parties of the first and second part should together constitute a board of control, and should manage all the affairs of said company, and might act by committee, agent, or proxies, and might compose or select the board of directors of the defendant corporation; that afterwards, to wit, on the first day of June, A. D. 1866, with the consent of all the parties to said agreement, said Thomas W. Pierce sold and assigned all his interest in said contracts and agreement, to said Pierce and Blaisdell; that afterwards, to wit, on the eighth day of

October, A. D. 1867, with the consent of all the parties to said agreement, said Blaisdell sold and assigned to said Case all his interests in said contracts and agreements, that by virtue of said agreements, transfers, and assignments, the interest in all the contracts in plaintiff's declaration mentioned before the issuing of said stock, to wit, on the ninth day of October, A. D. 1867, the right of control of the construction of said railroad under said contracts in the declaration mentioned, became and was vested in the said Pierce, Wiggins, Brink, Thompson, Dennison, Smith, Bradley, and Case, as a board of control; that the defendant, from and after the said eighth day of October, till the date of the plaintiff's writ, recognized the said board of control as the contractors under the contracts in the declaration mentioned, and treated and dealt with them as such, thereby consenting to and ratifying the transfers and assignments as aforesaid; that by virtue of the premises the right under the contracts in the declaration mentioned became, long prior to the issue of said stock, vested in said Wiggins, Pierce, Brink, Case, Thompson, Bradley, Smith, and Dennison, in the same manner and to the same extent as it was originally vested in said Pierce and Blaisdell; that the said board of control, to wit, said Wiggins, Pierce, Brink, Case, Thompson, Bradley, Smith, and Dennison, before the issue of the stock complained of in the declaration, to wit, on the twentieth day of December, A. D. 1867, did consent in writing to said issue of said stock by said defendants; and that it is ready to verify.

"Wherefore it prays judgment, if said plaintiff his action aforesaid against it ought to have or maintain, and for his costs."

To this plea the plaintiff filed a general demurrer, which was joined.

The presiding judge, *pro forma*, sustained the demurrer and adjudged the declaration bad; and the plaintiff alleged exceptions.

*P. Barnes*, for the plaintiff.

*Davis & Drummond*, for the defendants.

Poor *v.* European and North American Railway Company.

WALTON, J. This case is before the court on demurrer. The plaintiff says the defendants' plea is insufficient, and the defendant replies by saying that the plaintiff's declaration is bad. We are inclined to think both are right. But as judgment must be given against the party who committed the first error, and as we are satisfied judgment must be against the plaintiff, upon this ground, we have not found it necessary to scrutinize the defendants' plea very closely.

That the plaintiff's declaration is bad we cannot doubt. We are unable to discover in its recitals any cause of action, *ex contractu.* It contains in general terms an allegation of bad faith and an intent to violate a trust which the plaintiff says the defendant company entered into respecting his shares; but it fails to disclose any contract, or trust, the breach of which would give the plaintiff a right of action.

Nor can we discover in the recitals any recognized cause of action, *ex delicto.* The act complained of is the issuing of certificates of stock without the consent of these contractors. But it is not averred that the plaintiff was one of those contractors. How his interests were thereby injuriously affected, how he was thereby defrauded, the declaration fails to disclose. In fact, we are at a loss to determine whether the pleader intended to set out a cause of action, *ex contractu,* or a cause of action, *ex delicto.* A declaration so vague and uncertain is clearly bad.

*Exceptions sustained.*

*Plaintiff's declaration adjudged defective.*

APPLETON, C. J.; CUTTING, KENT, BARROWS, and DANFORTH, JJ., concurred.